United States District Court
Southern District of Texas

**ENTERED**

August 08, 2017

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PAREE LA'TIEJIRA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | Civ. A. H-16-2574 |
| | § | |
| FACEBOOK, INC., MARK | § | |
| ZUCKERBERG, KYLE ANDERS AND | § | |
| FICTITIOUS DEFENDANTS A,B,C, | § | |
| | § | |
| Defendants. | § | |

**OPINION AND ORDER OF DISMISSAL**

Pending before the Court in the above referenced case, grounded in diversity jurisdiction, alleging defamation/libel, breach of implied contract based on Facebook Inc.'s bullying policy, and intentional infliction of emotional distress, and seeking to hold the Communications Decency Act ("CDA") unconstitutional as applied, is *inter alia* Facebook, Inc.'s ("Facebook's") and Mark Zuckerberg's ("Zuckerberg's")(collectively, "the Facebook Defendants'") motion to dismiss Plaintiff Paree La'Tiejira's ("Plaintiff's" or "La'Tiejira's") First Amended Complaint under § 27.003 of the Texas Citizens Participation Act ("TCPA") (instrument #32). Section 27.003 ("Motion to Dismiss") provides,

> (a) If a legal action is based on, relates to, or is in response to a party's exercise of the right of free speech, right to petition, or right of association, that party may file a motion to dismiss the legal action.

> (b) A motion to dismiss a legal action under this section must be filed not later than the 60th day after the date of service of the legal action. The court may extend the time to file a motion under this section on a showing of good cause.

> (c) Except as provided by Section 27.006(b), on the filing of a motion under this section, all discovery in the legal action is suspended until the court has ruled on the motion to dismiss.

A hearing was held on the motion on August 2, 2017. After careful review of the record and the applicable law, the Court concludes that the Facebook Defendants have correctly interpreted the law and applied it to the facts here, demonstrating that their motion to dismiss all of La'Tiejira's claims against them under the TCPA and the CDA should be granted with prejudice for the reasons stated below.

The First Amended Complaint (#27) asserts that Plaintiff is a resident of Houston, Texas; Facebook is a Delaware corporation with its principal place of business in Menlo Park, California; and Zuckerberg is a resident of California and co-founder and CEO of Facebook.   These facts are not contested. Because in nearly eleventh months' time Plaintiff was never able to identify or find the location of Defendants Kyle Anders, A, B, and C to serve them, and thus never able to establish subject matter or personal jurisdiction over them, after substantial notice the Court recently dismissed the claims against them (#51).[1]

### Applicable Law

**The TCPA**

---

[1]   Thus that portion of Facebook Defendants' other motion to dismiss on Federal Rule of Civil Procedure 12(b) grounds (#33), is MOOT.

Defendants have requested that the Court address the TCPA motion first (#32 at p.2; #33 at p.1.).

Sections 27.001-27.011 of the Texas Civil Practices and Remedies Code Ann. (West 2011), constitute the TCPA, which "is an anti-SLAPP statute[2] that allows a motion "designed to protect the defendant from having to litigate meritless cases aimed at chilling First Amendment expression." *NCDR, LLC v. Mauze & Bagby, PLLC*, 745 F.3d 742, 751 (5th Cir. 2014), citing Tex. Civ. Prac. & Rem. Code Ann. § 27.003(a).  The TCPA "protects citizens who petition or speak on matters of public concern from retaliatory lawsuits that seek to intimidate or silence them."  Tex. Civ. Prac. & Rem. Code §§ 27.001-.011.  The protection consists of the availability of a special motion for an expedited consideration of any suit that appears to stifle the defendant's communication on a matter of public concern."  *In re Lipsky*, 460 S.W. 3d 579, 584, 586 (Tex. 2015).  Usually the motion "must be filed within sixty days after the service of the legal action, although the TCPA provides that a court can extend the filing deadline on a showing of good cause."  *NCDR*, 745 F.3d at 746, *citing* § 27.003(b).  Its

_____

[2] SLAPP is an acronym for a "Strategic Lawsuit Against Public Participation"--"abuse of defamation and similar causes of action to chill the defendant's participation in public controversies."  *Cuba v. Pylant*, 814 F.3d 701, 704 n.1 (5th Cir. 2016).  It provides a means for a defendant near the beginning of a suit to seek dismissal of certain claims in the lawsuit.  *NCDR, LLC v. Mauze & Bagby, PLLC,* 745 F.3d 742, 746 & n.3 (5th Cir. 2014).  *See also Serafine v. Blunt*, 466 S.W. 3d 352, 356 (Tex. App.--Austin 2015)("The purpose of the Act is 'to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of persons to file meritorious lawsuits from demonstrable injury. [§ 27.002]"

"purpose is to identify and summarily dispose of lawsuits designed only to chill First Amendment rights, not to dismiss meritorious lawsuits." *Id.* at 589, *citing* § 27.002[3] (balancing "the constitutional rights of persons to petition, speak freely, and otherwise participate in government to the maximum extent permitted by law" against "the right of a person to file meritorious lawsuits for demonstrable injury."). In addition, the statute also requires a "prima facie case," which traditionally means the "minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *Lipsky*, 460 S.W. 3d at 590, *citing In re E.I. DuPont de Nemours & Co.*, 136 S.W. 3d 218, 223 (Tex. 2003). *See also Serafine v. Blunt*, 466 S.W. 3d 352, 358 (Tex. App.--Austin June 26, 2015)("Prima facie evidence is evidence that, until its effect is overcome by other evidence, will suffice as proof of a fact in issue. In other words, a prima facie case is one that will entitle a party to recover if no evidence to the contrary is offered by the opposition party.")(*citing Rehak Creative Services, Inc. v. Witt*, 404 S.W. 3d 716, 726 (Tex. App.--Houston [14th Dist.] 2013,

---

[3] Section 27.002 states,

> The purpose of this chapter is to encourage and safeguard the constitutional right of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury.

To succeed in this goal, the TCPA offers a means for a defendant early in a lawsuit to pursue dismissal of such First Amendment claims in the lawsuit. *NCDR*, 745 F.3d at 746.

petition denied)).   Although the TCPA is a state law, it applies
to Texas law claims in a federal court sitting in diversity.
*NDCR*, 745 F.3d at 752-53; *Brown v. Wimberly,* 477 Fed. Appx. 214,
216 (5th Cir. 2012).

Section 27.003 of the Texas Civil Practice and Remedies
Code describes the triggering motion to dismiss,

> (a) If a legal action is based on, relates
> to, or is in response to a party's exercise
> of the right of free speech, right to
> petition, or right of association, that party
> may file a motion to dismiss the legal
> action.

> (b) a motion to dismiss a legal action under
> this section must be filed not later than the
> 60th day after the date of service of the
> legal action.  The court may extend the time
> to file a motion  under this section on a
> showing of good cause.

> (c) Except a provided by Section 27.006(b) on
> the filing of a motion under this section,
> all discovery in the legal action system is
> suspended until the court has ruled on the
> motion to dismiss.

Section 27.006, entitled "Evidence," provides

> (a) In determining whether a legal action
> should be dismissed under this chapter, the
> court shall consider the pleadings and
> supporting and opposing affidavits stating
> the fact on which the liability or defense is
> based.

> (b) On a motion by a party or on the court's
> own motion and on a showing of good cause,
> the court may allow specified and limited
> discovery relevant to the motion.

By filing such a motion to dismiss under the TCPA, a
defendant, who believes that the plaintiff's lawsuit is a response
to the defendant's legal exercise of his First Amendment rights,
commences a two-step process.  *Id.* at 586.  First the defendant

must show by a preponderance of the evidence that the plaintiff's cause of action "is based on, relates to, or is in response to the [movant's] exercise of:  (1) the right of free speech; (2) the right to petition; or (3) the right of association." *Id.* at 586-87, *citing* Tex. Civ. Prac. Rem. Code § 27.005(b).  "The 'right of free speech' refers to communications related to 'a matter of public concern' which is defined to include an issue related to: '(A) health or safety; (B) environmental, economic, or community well-being; (C) the government; (D) a public official or public figure; or (E) a good, product or service in the marketplace.'" *Id.* at 586 n.4., *citing* § 27.001(3), (7)(A)-(E).  "The 'right to petition' refers to a wide range of communications relating to judicial, administrative, or other governmental proceedings.'" *Id.* n.5, *citing* § 27.001(4).  "The 'right of association' refers to people 'collectively express[ing], promot[ing], pursu[ing], or defend[ing] common interests.'" *Id.* n.6, *citing* § 27.001(2).  If the movant succeeds on the first step, on the second step the burden shifts to the plaintiff to "'establish [] by clear and convincing evidence a prima facie case for each essential element of the claim in question.'" *Id.* at 587, *citing* § 27.005(c).  The statute does not define "clear and specific evidence" and the courts are split over its meaning. *Id.* at 587.  The Texas Supreme Court has opined,

> The applicable evidentiary standard is generally determined by the nature of the case or the applicable claim. Criminal cases require proof beyond a reasonable doubt, a near certainty, whereas civil cases typically apply the preponderance-of-the-evidence standard, that is, a fact-finder's

> determination that the plaintiff's version of
> the events is more likely than not true.
> Some civil claims, including some defamation
> claims, elevate the evidentiary standard to
> require proof by clear-and-convincing
> evidence. *Bentley v. Bunton*, 94 S.S. 3d 561,
> 596 (Tex. 2002). This standard requires that
> the strength of the plaintiff's proof
> produces in the mind of the trier of fact a
> firm belief or conviction as to the truth of
> the allegation.

*Id.* at 589.   At the hearing counsel for the Facebook Defendants

argued that as movants they satisfied the three steps in their

analysis: (1) they showed that their the dispute with La'Tiejira

related to activity dealing with free speech (defamation,

intentional infliction of emotional distress,[4] implied breach of

contract)[5] (2) about a matter of public concern (defamation claims

and publishing on the internet) (3) that is related to a public

figure (La'Tiejira as a adult entertainment actress who made

substantial sums of money at the time).

While deciding if the plaintiff's claim should be

dismissed, the court should consider the pleadings and any

supporting affidavits. *Id.* at 587, *citing* § 27.006(a). The

filing of the motion usually stays discovery, § 27.003(c), but the

statute also permits a court to order limited discovery relating

to the motion for "good cause" under § 27.006(b). Within that

restricted time period, ordinarily within 150 days of service of

the underlying legal action, the court must resolve the motion,

---

[4] *Deaver v. Desai*, 483 S.W. 3d 668, 677 (Tex. App.--
Houston 2015).

[5] *Kinney v. BCG Attorney Search, Inc.*, No. 03-12-00579-
CV, 2014 WL 1432012, at *2, 13 (Tex. App.-Austin Apr. 11, 2014).

and if the defendant's constitutional rights are implicated, the court must dismiss the plaintiff's claim unless the plaintiff has successfully presented his *prima facie* case. *Id.*, *citing* § 27.005 and §§ 27.003(b), .004(a), and .005(a).

Under the TCPA the "exercise of the right of free speech" means "a communication made in connection with a matter of public concern." Tex. Civ. Prac. & Rem. Code § 27.0001(3). Statements published on Facebook, including the purportedly defamatory statements of which La'Tiejira complains, are "communications" under the TCPA. *Id.* § 27.001(1)("'Communication' includes the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic."). The "communications" were also made "in connection with a matter of public concern" because communications about 'public figures' are matters of public concern. As noted, La'Tiejira considered herself a public figure based on her profession as an actress in the adult entertainment field who made substantial money in signings, photographs, club appearances dancing, adult video store appearances. These communications referring to La'Tiejira's career in adult entertainment, statements published on Facebook, including Anders' allegedly defamatory ones, are communications about issues of public concern and arise from the exercise of the Facebook Defendants' free speech right to publish others' speech on its platform. Thus the burden shifts to La'Tiejira to produce clear and specific evidence supporting each element of her claims, but she has not and cannot

satisfy her burden.  Her claims are foreclosed by Facebook's terms of service and a variety of other legal flaws.

"'A district court's denial of [a TCPA] motion is conclusive as to whether [the TCPA] mandates dismissal of the suit . . . .  If a trial court denies [a TCPA] motion, then the case proceeds as it normally would.'" *NCDR*, 745 F.3d at 748.  The plaintiff may defeat a Texas anti-SLAPP motion by simply constructing a prima facie case for each element of the claim. *Id.* at 749, *citing* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c). The purpose of a TCPA is different from that of the underlying action; "an anti-SLAPP motion 'resolves a question separate from the merits in that it finds that such merits may exist, without evaluating whether the plaintiff's claim will succeed.' . . . '[T]he purpose of an anti-SLAPP motion is to determine whether the defendant is being forced to defend against a meritless claim,' not to determine whether the defendant actually committed the relevant tort.'" *Id.* (citations omitted).  Section 27.008 of the Tex. Civ. Prac. & Rem. Code Ann., addressing "Appeal," states,

> (a) If a court does not rule on a motion to dismiss under Section 27.003 in the time prescribed by Section 27.005, the motion is considered to have been denied by operation of law and the moving party may appeal.

> (b) An appellate court shall expedite an appeal or other writ, whether interlocutory or not, from a trial court order on a motion to dismiss a legal action under Section 27.003 or from a trial court's failure to rule on that motion in the time prescribed by Section 27.005.

Furthermore, "[b]ecause the anti-SLAPP motion is designed to protect the defendant from having to litigate meritless cases

aimed at chilling First Amendment expression, the district court's denial of an anti-SLAPP motion would effectively be unreviewable on appeal from a final judgment.'"

***The CDA***

Under the federal Communications Decency Act of 1996 ("CDA"), 47 U.S.C. § 230(c)(1), "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."   The statute broadly defines "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the internet . . . ."  47 U.S.C. § 230(f)(2).   In addition it states, "No cause of action may be brought and no liability imposed under any State or local law that is inconsistent with this section."  47 U.S.C. § 230(e)(3).   Thus the CDA "provides broad tort immunity to website providers." *Samsel v. Desoto County* School Dist., ____ F. Supp. 3d ____, Cause No. 3:14-CV-00113-MPM-SAA, 2017 WL 1043640, at *33 (N.D. Miss. Mar. 17, 2017); *Google, Inc. v. Hood*, 822 F.3d 212, 220 (5th Cir. 2016)(§ 230 is "Congress's grant of 'broad immunity' to internet service providers 'for all claims stemming from their publication of information created by third parties,' which we and other circuits have consistently given a wide scope.")

**First Amended Complaint's Factual Allegations**

Paree La'Tiejira, a/k/a "Lady Paree," asserts that she is a forty-one year old biological female, born on March 19, 1975.

In 1993 Plaintiff moved to Los Angeles, California as a "business entrepreneur pursuing a modeling career."  #27, ¶2.  She moved to Houston in 1995, where she has resided ever since.  At present she is unemployed, but is looking to become a model.

Before December 1999 Plaintiff sued Mark C. Carrier and Leisure Time Entertainment in Circuit Court in Lake County, Indiana in Civil Action No. 45CO1-9511-CT-02095, claiming that they published false and defamatory information that she was born a male, and she was awarded a default judgment.  #27, Ex. 1, Findings of Fact, Conclusions Thereon and Order, Jan. 13, 2010. Among the Findings are the following (*sic*):

> 8.   Following publication of the false and defamatory statements by Defendants that Plaintiff "used to be a man", Plaintiff was examined by Dr. Wally Zollman, a plastic surgeon from Indianapolis, Indiana, who is experienced in transgender surgical procedures, Dr. Zollman confirmed that Plaintiff is a female with no signs of having undergone transsexual surgery.

> 9.  Dr. Mark Cones also examined Plaintiff on a routine basis in Texas and confirmed Plaintiff is a female with normal gynecological exams, and determined that Plaintiff was once pregnant, which resulted in miscarriage.

> 11.  The Court hereby finds that Plaintiff is and has been a woman since birth, has never been a man and has never had transgender surgical procedures performed on her.

On March 19, 2016, a person purportedly named "Kyle Anders" posted on La'Tiejira's Facebook page the following (*sic*):

> 'a man that's what you are for real you,re no woman for sure and all the world knows that you are a man born male you men make me sick with all this crazy homo transtranny shit grow up accept what God made you that is what

you are a man accept it and move the hell on
yeah yeah yeah so what

Dressing in drag wearing makeup drag queens
homos damn men cant make your mind up get you
act straight you are male stop acing like a
female be who God made you to be that's a man
that what gets me the owner of this facebook
let any ole freak on her you got men wearing
makeup wigs cut of penis high cheek bone ex
football players wearing women clothing like
high fashion models you say you're a model
worldwide model come on you,re the football
player I talked to in California you had some
surgery done but I know that's you and you,re
not fooling me paree thats you I never forget
a face stop lying on facebook change your sex
to male ever one in this worlds knows that
you,re male man I do not care who you claim
to be you,re (NFL)

Who would hire you as a model needs to look
up your dress I'm sure your balls are still
there the owner of this facebook is so big he
needs to better check out these things.

Whatever.

On March 19, 2016 Plaintiff responded (*sic*),

Stay off my page. **I do not even know who the
hell you are** how can I bee a man with a
period you mut be truly sad and re-tarded to
believe that a man can have a baby and a
period **stay off my page** you are a complete
idiot.

That same day Plaintiff employed Facebook's procedures
for deleting the post on her page because she did not like what it
said, because someone was harassing or bullying her, and because
such speech should not be allowed on Facebook because it is spam.
Specifically she wrote to the Facebook Complaint Department (*sic*),

Mark Zuckerberg All of You **you need to take
that post down of me from Kyle Anders** now I
asked you i,m complaining to you now!  he has
me up on here for all the world to see he is
saying i,m a TRANSSEXUAL I am a woman you
need to remove that now today and today is

-12-

> March 19, 2016 I do not know this person I
> told him to leave me alon i,m of being lied
> on abused and sent hat mail on here I am only
> on here for a modeling Job now at is at deep
> risk!  i,m no NFL Player i,m born a girl you
> are letting his person harass me threaten me
> abuse me spread lies on me this is a very
> hurtful thing I been through this sorry pain
> before and I am tired of it all just leave me
> along!  what a birthday present full of pain
> hurt lies and malice thanks Facebook.

 Nevertheless, the post remained up for six months.

Actual malice is found when "the defendant publishes a defamatory statement 'with the knowledge that it was false or made with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964)("The constitutional guarantees require . . . a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'––that is, with knowledge that it was false or with reckless disregard of whether it was false or not."). "Any one claiming to be defamed by the communication must show actual malice, or go remediless. This privilege extends to a great variety of subjects and includes matters of public concern, public men, and candidates for office." *Id.* at 281-82. To establish reckless disregard of falsity, "a plaintiff must designate 'sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *Poyster v. Peerless*, 775 N.E. 2s 1101, 1107 (Ct. App. Ind. 2002). "'[R]eckless conduct is not measured by whether a reasonably prudent man would have published or would have investigated before publishing.'" *Id.,*

*citing Journal-Gazette Co. v. Bandido's, Inc.,* 712 N.E. 446, 456 (Ind. 1999).

In the Indiana suit that La'Tiejira brought against Mark Carriere and Leisure Time Entertainment, the court concluded (#41 at ¶ 9),

> Defendants could not have believed the statements they published were true because: Plaintiff had the physical appearance of a female; she performed in her occupation as a female; she had previously been held out and promoted by these Defendants to be a female; and Defendant Carriere observed, first-hand, Plaintiff menstruating during a filming of scenes for Defendants' production company.

On August 23, 2016 Plaintiff filed this lawsuit against Facebook, Zuckerberg, and Anders.  Sometime in mid-September, 2016 Facebook removed the post, approximately six months after it was supposedly placed on her Facebook page by Kyle Anders.  She also claims that because Facebook requires all of its users to provide name, age, gender and a valid email address, Facebook, Inc. has the information about Anders that she seeks, although she has not filed motions to compel nor shown any effort to get it through judicial process.

La'Tiejira complains that the lengthy posting violated Facebook's policy of protecting public figures:

> We permit open and critical discussion of people who are featured in the news or have a large public audience based on their profession or chosen activities.  We remove credible threats to public figures, as well as hate speech directed at them--**just as we do for private individuals.**

Facebook also has a policy regarding bullying and harassment and hate speech, with which it failed to comply (#27, Ex. 3):

> We don't tolerate bullying or harassment.  We
> allow you to speak freely on matte[r]s and
> people of public interest, but we remove
> content that appears to purposefully target
> private individuals with the intention of
> defrauding or shaming them.   The content
> includes, but is not limited to:
>
> > *   Pages that identify and shame
> > private individuals,
> > *   Images altered to degrade
> > private individuals,
> > *   Photos or videos of physical
> > bullying posted to shame the
> > victim,
> > *   Sharing person[al] information
> > to blackmail or harass people, and
> > *   Repeatedly targeting other
> > people with unwanted friend
> > requests or messages
>
> We define private individuals as people who
> have neither gained news attention nor the
> interest of the public by way of their
> actions or public profession.
>
> We remove content, disable accounts, and work
> with law enforcement when we believe there is
> a genuine risk of physical harm or direct
> threats to public safety.

Although during the August 2, 2017 hearing La'Tiejira's attorney

argued that she is not a public figure, in her briefing La'Tiejira

concedes that she may at one time, based on her former career in

adult entertainment, have been considered such a public figure

under the policy.  She also insists that Facebook and Zuckerberg

are not protected by § 230(c) of the CDA: to warrant the immunity

provided by § 230(c), the hate speech or bullying and harassment

must be removed within "a reasonable time," not five to six

months.  She further maintains that Anders' alleged statements and

Facebook and Zuckerberg's failure to comply with their removal

policies for 5-6 months are not actions involving the exercise of

certain constitutional rights under the TCPA since none of the statements are matters of public concern.

In addition to state-law claims for defamation and libel, breach of implied contract, and intentional infliction of emotional distress, the First Amended Complaint also asks the Court to declare § 230 of the CDA unconstitutional as applied to her because its blanket immunity deprives her of her First Amendment right of access to the courts to vindicate her civil wrong and injury caused by the Facebook Defendants' six-month delay in removing the defamatory statements, and seeks $16 million in damages, including $10 million in punitive damages.

La'Tiejira insists the harm she suffered was caused directly by Facebook and Zuckerberg's failure to timely remove the postings of hate speech and bullying. If Facebook is entitled to immunity for its failure to timely remove these hate speech posts, in contravention to the full faith and credit provisions of the law, in their failure to comply with their stated policies against hate speech and bullying, and withholding and contact information of Kyle Anders, then Plaintiff is being denied redress of her harms caused by Facebook, Zuckerberg, and Anders.

Plaintiff maintains that the CDA, as applied under these facts, is unconstitutional, denies Plaintiff due process and her constitutional right of access to the courts under the first amendment under state and federal law.

**Facebook and Zuckerberg's Motion to Dismiss First Amended Complaint Pursuant to the TCPA (#32)**

-16-

The TCPA's purpose is to "encourage and safeguard the constitutional rights of persons to petition, speak freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." Tex. Civ. Prac. & Rem. Code § 27.002.

In the first of the two-step analysis under the TCPA, the Facebook Defendants maintain that Plaintiff's claims necessarily relate to the Facebook Defendants' First Amendment rights and are thus squarely within the scope of § 27.003(a) of the TCPA.  Her claims concern the publication of statements by third-party Kyle Anders and the Facebook Defendants' decision to permit the statements to remain on their platform. i.e., La'Tiejira's claims arise directly and exclusively from Facebook's First Amendment right to decide what to publish and what not to publish on its platform.  *See Cruz v. Van Sickle*, 452 S.W. 3d 503, 517-18 (Tex. App.--Dallas 2014); *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 258 (1974)("The choice of material to go into a newspaper and the decisions made as to limitations on the size and content of the paper, and treatment of public issues and public officials--whether fair or unfair--constitute the exercise of editorial control and judgment."); *Publius v. Boyer-Vine*, No. 1:16-cv-1152-LJO-SKO, 2017 WL 772145, at *5 (E.D. Cal. Feb. 27,2017)(owner of a website has a "First Amendment right to distribute and facilitate protected speech"); *Zhang v. Baidu.com Inc.*, 10  F. Supp. 3d 433, 437 (S.D.N.Y. 2014)(online publishers have a First Amendment right to distribute others' speech and

exercise editorial control on their platforms because "the First Amendment's protections apply whether or not a speaker articulates, or even has, a coherent or precise message, and whether or not the speaker generated the underlying content in the first place"), *appeal withdrawn* (2d Cir. 14-1495)(Aug. 1, 2014).

Furthermore the Facebook Defendants correctly contend that they have established a valid defense to all of La'Tiejira claims under the federal CDA § 27.005(d) and the TCPA § 27.009(a)(1),(2).   Although La'Tiejira claims that she used Facebook's procedures to report the offensive messages to Facebook and asked Facebook to have them removed, it is not clear that she actually did.   Instead, Exhibit 2 to the First Amended Complaint (#27) demonstrates that La'Tiejira posted a comment on a Facebook page titled, "The Complaint Department.   Make your Complaints here."  *Id.*, Ex. 2 at 5.   Defendants claim that this page was created by and is operated by some unidentified third party, not by Facebook, and that Facebook does not receive messages through that page or in that manner.  *See* #14, Declaration of Mikella Hurley in Support of Motions to Dismiss ("Hurley Decl."), Exs. B, C, and D (publicly available Facebook Help Center articles titled, "How do I remove something posted on my Timeline?" https://www.facebook.com/help/261211860580476,   and   "What is blocking and how do I block someone?", available at https://www.facebook.com/help/168009843260943).   The offensive messages were removed shortly after Plaintiff filed this suit against Defendants.

Defendants then filed their motions to dismiss on October 31, 2016.  The Court granted La'Tiejira until April 3 and April 28, 2017 to retain counsel and respond to the motions.  On March 24 counsel for La'Tiejira appeared and filed the new complaint.  In the original complaint Plaintiff does not allege that Facebook Defendants authored any statements about her gender identity or were at all responsible for creation of the offensive messages giving rise to this case, but only states that she reported the contents to Facebook and told Facebook it had a duty to remove them immediately.  By failing to do so, Facebook acted unlawfully and caused La'Tiejira to suffer damages because "promotors, producers, and film-makers have ceased making contacts and employment overtures," and she was exposed to harassment and threats.

The CDA shields the Facebook Defendants from liability for any statements put up on an account holder's Facebook page by a third party: "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider," and "No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." 47 U.S.C. § 230(c)(1)(e), (e)(3).  The CDA applies "in all cases arising from the publication of user-generated content." *Doe v. MySpace*, 528 F.3d 413, 418 (5th Cir. 2008).

"At its core," the CDA "bars 'lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions--such as deciding whether to

publish, withdraw, postpone, or alter content." *Jones v. Dirty World Entertainment Recordings, LLC*, 755 F.3d 398, 407 (6th Cir. 2014), *quoting Zean v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997.   By immunizing interactive computer services like Facebook from liability for claims based on user-generated content, Congress sought "to promote the continued development of the Internet and other interactive computer services . . . [and] to preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation."   47 U.S.C. § 230(b)(1), (2).   Moreover "[p]arties complaining that they were harmed by a Website's publication of user-generated content have recourse:   they may sue the third-party user who generated the content, but not the interactive computer service that enabled them to publish the content online." *MySpace*, 528 F.3d at 419. Given this clear Congressional intent, courts construe CDA immunity very broadly.

The Facebook Defendants submit a list of cases bringing claims against them under the CDA where the claims were based on an alleged failure to prevent or remove unlawful, user-generated content and in which the courts have routinely rejected the claims against the Facebook Defendants. *See e.g., Klayman v. Zuckerberg*, 753 F.3d 1354, 1357-59 (D.C. Cir. 2014)(CDA barred negligence and assault claims); *Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1066 (N.D. Cal. 2016)(CDA barred claims for defamation, invasion of privacy, intentional infliction of emotional distress, and violation of California's Unfair Competition Law); *Sikhs for*

*Justice ("SFJ"), Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1095-96 (N.D. Cal. 2015)(CDA barred claims for violation of civil rights laws); *Gaston v. Facebook, Inc.*, No. 3:12-cv-0063-ST, 2012 WL 629868, at *7 (D. Or. Feb. 2, 2012)(CDA barred claims for defamation, invasion of privacy, and related torts), *report and recommendation adopted*, 2012 WL 610005 (D. Or. Feb. 24, 2012).

In the instant case Facebook Defendants are entitled to CDA immunity because (1) they are providers of an "interactive computer service"; (2) La'Tiejira's claims treat them as "publishers" of the purported defamatory statements; and (3) the allegedly defamatory statements were provided by another information content provider." 47 U.S.C. § 230(c)(1); *Doe v. Bates*, No. 5:05-CV-91-DF-MC, 2006 WL 3813758, at *2 (E.D. Tex. Dec. 27, 2006).  Thus La'Tiejira's claims are barred by the CDA.

Many courts have held that Facebook satisfies the definition for "interactive computer service."  *See, e.g., Klayman*, 753 F.3d at 1357; *Caraccioli*, 167 F. Supp. 3d at 1065; *Sikhs for Justice*, 144 F. Supp. 3d at 1093.  The *Klayman* court, 753 F.3d at 1357-58, held that Zuckerberg in his role as CEO of Facebook is entitled to immunity under the CDA as a "provider" of interactive computer services.  Thus the first requirement for CDA immunity has been satisfied, and Plaintiff does not disagree.

La'Tiejira's claims against the Facebook Defendants treat them as publishers of allegedly defamatory statements about Plaintiff's gender identity.  When a claim treats a provider as a publisher of user-generated content, what matters is whether the cause of action inherently requires the court to treat the

defendant as the 'publisher or speaker' of content provided by another," i.e., whether the duty the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a 'publisher or speaker.'  If it does, section 230(c)(1) precludes liability."  *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009).  For instance, "the monitoring, screening, and deletion of [user-generated] content" are actions "quintessentially related to a publisher's role." *Green v. Am. Online (AOL)*, 318 F,3d 465, 471 (3d Cir. 2003); *see also Klayman*, 753 F.3d at 1359 ("indeed, the very essence of publishing is making the decision whether to print or retract a given piece of content--the very actions for which Klayman seeks to hold Facebook liable.").  Thus "any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230." *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1170 (9th Cor. 2009).

In the instant case all of La'Tiejira's claims seek to hold the Facebook Defendants liable for decisions about the monitoring, screening, and deletion of user-generated content-specifically the allegedly defamatory message posted by Defendant Anders.  First Am. Complaint at 20-21, ¶¶ 20-21 ¶¶ V.a.4,6,9,10 Thus the second requirement of CDA immunity is met.  The offensive messages in dispute were allegedly authored by third-party Kyle Anders, satisfying the third element of CDA immunity.

Furthermore, CDA immunity "applies even after notice of the potentially unlawful nature of the third-party content."

*Universal Comm'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 412, 420 (1st Cir. 2007); *see also Dirty World Entm't*, 755 F.3d at 407 (explaining that the CDA bars "notice-liability defamation claims lodged against the interactive computer service providers").  To demonstrate that a service provider exceeded its traditional publisher role and thus forfeited its CDA immunity, a plaintiff must do more than allege that the provider *continued to publish* content provided by a third party; she must plausibly allege that the provider itself *authored or created* the content.  *See, e.g., Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135( 9th Cir. 2014)(plaintiff must 'plead facts tending to demonstrate that the [user-generated content] was not, as is usual, authored by a user").  La'Tiejira fails to allege a single fact suggesting that the Facebook Defendants authored the offending posts.  Therefore she has not and cannot allege that Facebook acted as an "information content provider" with respect to these posts and her claims against the Facebook defendants are barred by the CDA.

Apparently acknowledging that the Facebook Defendants are immune to her claims under the CDA, La'Tiejira  asserts but fails to explain how the CDA denies her due process.  #27 at 18,¶IV.23.  She also claims that the CDA "contraven[es] . . . the full faith and credit provisions of the law," *id.* at 17-18 ¶ IV.22, and infringes upon "her constitutional right of access to the courts," *id.* at 18 ¶ IV.23.  Facebook now contends that it is not aware of a single court that has endorsed those theories in the context of the CDA and maintains those theories are meritless.

Plaintiff's bare assertion that applying the CDA would deny her due process is insufficient to state a colorable constitutional claim. *Robertson v. Bowen*, 803 F.2d 808, 810 (5th Cir. 1986)("mere allegation of a denial of due process" was insufficient to avoid dismissal). Moreover no due process concerns are implicated because Plaintiff can still seek relief from the actual wrongdoer, Anders.

Second, La'Tiejira has not and cannot explain how the CDA violates the "full faith and credit" principle. She seems to argue that statements made by Marc C. Carrier and Leisure Time Entertainment about her gender identity in the Indiana case many years ago and found to be defamatory should apply to statements that Anders made about her gender identity recently on her Facebook page and serve to hold the Facebook Defendants liable for publishing the statements by Anders. Full faith and credit requires courts to recognize final judgments involving the same subject matter and parties that are either identical to or in privity with those in the first action. Here neither defendant Anders nor the Facebook Defendants were parties to the Indiana state court suit and the Indiana state court case, which did not involve the same claims or the same defenses, including the DCA. Full faith and credit is irrelevant.

Last, the CDA does not abridge La'Tiejira's right of access to the courts. Such claims have been recognized in only two narrow categories: where "official action frustrates a plaintiff . . . in preparing and filing suits" and where "official acts" have caused the loss or inadequate settlement of a

meritorious case." *Christopher v. Harbury*, 536 U.S. 403, 413-14 (2002). Examples would include denial-of-access claims in refusing to allow a prisoner access to the law library and imposition of filing fees on indigent plaintiffs. Moreover right-of-access claims are procedural, not substantive, and require that the plaintiff first demonstrate a "nonfrivolous arguable underlying claim." *Stephens v. Evers*, 318 Fed. Appx. 477, 480 (9th Cir. 2008); *Harury*, 536 U.S. at 415. The Facebook Defendants are private parties, not governmental entities, and their reliance on the CDA does not constitute "official action" directed at La'Tiejira, nor does it limit her ability to seek redress from the actual wrongdoer, Anders, La'Tiejira lacks a "nonfrivolous, arguable underlying claim because her claims are barred by the CDA.

The allegations in the First Amended Complaint demonstrate that all the requirements for CDA immunity are satisfied here: the Facebook Defendants provide an interactive computer service; La'Tiejira's claims treat the Facebook Defendants as publishers; and the offending statements at issue were created and posted by Anders, not the Facebook Defendants. Furthermore, La'Tiejira's challenges to the CDA are meritless. Therefore the CDA bars La'Tiejira's claims against the Facebook Defendants based on user-generated content. *Klayman*, 753 F.3d at 1357; *Caraccioli*, 167 F. Supp. 3d at 1065. Finally Facebook Defendants are immune to La'Tiejira's claims under the CDA.

Accordingly, the Facebook Defendants' anti-SLAPP motion under the TCPA has shown that La'Tiejira's claims are based on,

related to or in response to the Facebook Defendants' exercise of its rights of First Amendment rights.  The burden of proof then shifted to La'Tiejira to establish by clear and specific evidence a prima facie case for each essential element of its claims, but Plaintiff has not submitted any evidence.  Even if she had, she is immune from these claims under the CDA by its valid defense under § 203.

Accordingly, the Court

ORDERS that the Facebook Defendants' motion to dismiss La'Tiejira's First Amended Complaint under § 27.003 of the Texas Citizens Participation Act ("TCPA") and § 27.005(d) of the CDA (instrument #32) is GRANTED and this case is DISMISSED WITH PREJUDICE.

SIGNED at Houston, Texas, this 7th day of August, 2017.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE